UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 18-22389-CIV-SCOLA
MAGISTRATE JUDGE P.A. WHITE

ALBERTO REAL,

     Petitioner,

v.

JULIE JONES,

     Respondent.

_____/

               **REPORT OF**
          **MAGISTRATE JUDGE**

## I.  **Introduction**

The *pro se* petitioner, **Alberto Real**, a state convicted felon, currently confined at the Okeechobee Correctional Institution, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. §2254, challenging the constitutionality of his conviction and resultant sentence for first degree murder, entered following a jury verdict in Miami-Dade County Circuit Court, **Case No. F03-19237.**

The case has been referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive motions. See 28 U.S.C. §636(b)(1)(B), (C); S.D.Fla. Local Rule 1(f) governing Magistrate Judges; S.D. Fla. Admin. Order 2003-19; and, the Rules 8(b) and 10 Governing Section 2254 Cases in the United States District Courts.

No order to show cause has been issued, because it is evident

that summary dismissal is warranted. <u>See</u> Rule 4,[1] Rules Governing Section 2254 Proceedings; <u>see also</u>, <u>See</u> <u>e.g.</u>, <u>Broadwater v. United States</u>, 292 F.3d 1302, 1303-04 (11th Cir. 2002) (a district court has the power under Rule 4 of the Rules Governing Section 2255 Cases to summarily dismiss a movant's claim for relief so long as there is a sufficient basis in the record for an appellate court to review the district court's decision).

For its consideration of this petition (DE#1), the Court has reviewed the petitioner's available on-line criminal trial and appellate court dockets, relevant state court pleadings, together with the Florida Department of Corrections ("FDOC"), Corrections Offender Network, Inmate Population Information Detail, copies of which are being filed by separate order and made part of the court's record.[2]

## II.  <u>Procedural History</u>

Careful review of the trial and appellate courts' dockets reveal that the petitioner was charged with and convicted of first degree murder, following a jury verdict in **Miami-Dade County Circuit Court, Case No. F03-19237**. (<u>See</u> Trial Docket; <u>see also</u> 03/29/06 Judgment). He was adjudicated guilty and sentenced to a term of life imprisonment without parole. (<u>See</u> Florida Department of Corrections ("FDOC"), Corrections Offender Network, Inmate

---

[1]Rule 4 of the Rules Governing Section 2255 Petitions, provides, in pertinent part, that "[I]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner...."

[2]The court may take judicial notice of its own records in habeas proceedings. <u>See</u> <u>Fed.R.Evid</u>. 201; <u>United States v. Glover</u>, 179 F.3d 1300, 1302 n.5 (11th Cir. 1999)(finding the district court may take judicial notice of the records of inferior courts); <u>McBride v. Sharpe</u>, 25 F.3d 962, 969 (11th Cir. 1994), <u>Allen v. Newsome</u>, 795 F.2d 934, 938 (11th Cir. 1986).

Information Detail; see also 03/29/06 Judgment & Sentence). The judgment of conviction was *per curiam* affirmed on appeal on **July 23, 2008**, in a decision without written opinion. Real v. State, 986 So.2d 615 (Fla. 3 DCA 2008)(table). When no rehearing motion was filed, the direct appeal concluded with the issuance of the mandate on August 8, 2008. (See 4DCA Docket, **Case No. 3D06-714**).

At this juncture, it is worth mentioning that the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. §2244(d)(1)(A), established a one year statute of limitations for federal habeas corpus petitions. To determine **when** the one-year federal limitations period begins to run, it must be established when the petitioner's conviction became final. In order to do so, the court must first determine whether petitioner was entitled to seek review to the Florida Supreme Court, as the state's highest court. Determining what constitutes a "state court of last resort" or "the highest court of a State in which a decision could be had," for purposes of the Supreme Court's certiorari jurisdiction, requires an examination of state court procedures. See Costarelli v. Massachusetts, 421 U.S. 193, 195-97, 198-99, 95 S.Ct. 1534, 44 L.Ed.2d 76 (1975); Pugh v. Smith, 465 F.3d 1295, 1299-1300 (11th Cir. 2006); see also Gonzalez v. Thaler, 565 U.S. 134, 149, 132 S.Ct. 641, 656, 181 L.Ed.2d 619 (2012).

In Florida, Article V, section 3(b), of the Florida Constitution governs the jurisdiction of the Florida Supreme Court. See Wells v. State, 132 So.3d 1110, 1112 (Fla. 2014). That provision provides, in relevant part:

    (b)  Jurisdiction.—The supreme court:

        (3)  May review any decision of a district court of appeal that expressly declares valid a state statute, or

that expressly construes a provision of the state or
federal constitution, or that expressly affects a class
of constitutional or state officers, or that expressly
and directly conflicts with a decision of another
district court of appeal or of the supreme court on the
same question of law.

Fla. Const. art. V, §3(b)(3).

In <u>Wells</u>, the Florida Supreme Court summarized its decisions
addressing the limits of its jurisdiction under Fla. Const. art. V,
§3(b)(3):

[B]ased on our case law since <u>Jenkins [v. State</u>, 385
So.2d 1356 (Fla.1980)], it is clear that we have
explicitly held that this Court lacks discretionary
review jurisdiction over the following four types of
cases: (1) a *per curiam* affirmance rendered without
written opinion—<u>see</u> <u>Jenkins</u>, 385 So.2d at 1359; (2) a *per
curiam* affirmance with a citation to (i) a case not
pending review or a case that has not been quashed or
reversed by this Court, (ii) a rule of procedure, or
(iii) a statute—<u>see</u> <u>Dodi Publishing [Co. v. Editorial</u>
<u>America, S.A.</u>], 385 So.2d [1369,] 1369 [(Fla.1980)], and
<u>Jollie [v. State</u>], 405 So.2d [418,] 421 [(Fla.1981)];
(3) a *per curiam* or other unelaborated denial of relief
rendered without written opinion—<u>see</u> <u>Stallworth [v.</u>
<u>Moore</u>], 827 So.2d [974,] 978 [ (Fla. 2002)]; and (4) a
per curiam or other unelaborated denial of relief with a
citation to (i) a case not pending review or a case that
has not been quashed or reversed by this Court, (ii) a
rule of procedure, or (iii) a statute—<u>see</u> <u>Gandy [v.</u>
<u>State</u>], 846 So.2d [1141,] 1144 [(Fla. 2003)].

<u>Wells v. State</u>, 132 So.3d at 1113 (Fla. 2014); <u>see also</u>, <u>Persaud v.</u>
<u>State</u>, 838 So.2d 529, 531-32 (Fla. 2003).[3]

_____

[3]The Florida Supreme Court in <u>Persaud</u> found that the decisions in <u>Dodi</u>
<u>Publishing Co. v. Editorial America, S.A.</u>, 385 So.2d 1369 (Fla. 1980) and <u>Jollie</u>
<u>v. State</u>, 405 So.2d 418 (Fla. 1981), "when read together, stand for the
proposition that this [Florida Supreme Court] does not have jurisdiction to
review *per curiam* decisions of the district courts of appeal that merely affirm

As applied here, the petitioner's judgment of conviction was *per curiam* affirmed by the **Third** District Court of Appeal. Under Florida law, petitioner was not allowed to seek the Florida Supreme Court's discretionary review, because the **Third** District Court of Appeal issued an opinion affirming petitioner's judgment of conviction, without written opinion, Real v. State, 986 So.2d 615 (Fla. 3 DCA 2008)(table). See Wells v. State, 132 So.3d 1110 (Fla. 2014); Persaud v. State, 838 So.2d 529 (Fla. 2003).

Because the petitioner was not entitled to seek discretionary review to the Florida Supreme Court, the petitioner's conviction became final, and the AEDPA one-year limitations period began to run, on **October 21, 2008**, ninety days after the state appellate court affirmed his direct appeal, when the period for seeking discretionary review with the U.S. Supreme Court expired. See Kaufman v. United States, 282 F.3d 1336, 1338 (11 Cir. 2002)(concluding that conviction does not become "final" for purposes of §2555(f)(1) until the 90-day period for seeking certiorari review expires, even if prisoner does not petition for such review); Sup. Ct. R. 13; Gonzalez v. Thaler, 565 U.S. 134, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012).[4] Applying the finality trigger of §2244(d)(1)(A), the statute of limitations began running on

---

with citations to cases not pending review in this [Florida Supreme Court] Court." Persaud v. State, 838 So.2d 529, 531-32 (Fla. 2003).

[4]See Gonzalez v. Thaler, 565 U.S. 134, 146-47, 132 S.Ct. 641, 653-54, 181 L.Ed.2d 619 (2012)(holding that conviction becomes final upon expiration of time for seeking direct review); Jimenez v. Quarterman, 555 U.S. 113, 118-21, 129 S.Ct. 681, 685-86, 172 L.Ed.2d 475 (2009)(explaining the rules for calculating the one-year period under §2244(d)(1)(A)). See also Clay v. United States, 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003)(holding that "[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."); Chavers v. Secretary, Florida Dept. of Corrections, 468 F.3d 1273 (11th Cir. 2006)(holding that one-year statute of limitations established by AEDPA began to run 90 days after Florida appellate court affirmed habeas petitioner's conviction, not 90 days after mandate was issued by that court).

**October 21, 2008.**

Petitioner had one year from the time his conviction became final on **October 21, 2008** or until **October 21, 2009,** to timely file his §2254 petition. See Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (limitations period should be calculated according to "anniversary method," under which limitations period expires on anniversary of date it began to run) (citing Ferreira v. Dep't of Corr's, 494 F.3d 1286, 1289 n. 1 (11th Cir. 2007)(noting that limitations period should be calculated using "the anniversary date of the triggering event").

However, the one-year limitations period is statutorily tolled during times when a "properly filed" application for post-conviction relief is pending in the state forum. See 28 U.S.C. §2244(d)(2). An application is properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8, 121 S.Ct. 361, 364, 148 L.Ed.2d 213 (2000).

With the foregoing background, it appears that the federal limitations period ran untolled for approximately **7 months,** from the time petitioner's conviction became final on **October 21, 2008** until **March 31, 2009,**[5] when petitioner next filed a state habeas corpus petition with the Florida Fourth District Court of Appeal, assigned **Case No. 3D09-856.** (See 3DCA Docket, Case No. 3D09-856). Therein he raised two claims of ineffective assistance of direct

---

[5]The petitioner states he filed the motion on March 31, 2009, and the appellate court docket shows it was received on April 3, 2009. Absent evidence to the contrary, the court will utilize the petitioner's March 31, 2009 date as the day of filing. (DE#1:3:¶11). Absent the actual state court pleading, where the petitioner provides the date of filing and it defers from that listed on the state trial or appellate court docket, this court has utilized the date provided by petitioner as the date of filing.

6

appeal counsel on the basis that failed to obtain a full and complete record for appeal, failed to file an adequate brief on appeal, and failed to challenge the denial of the petitioner's motion to suppress statements. (DE#1:3:¶11).  On **April 24, 2009**, the Florida Fourth District Court of Appeal denied the petition on the merits. See Real v. State, 9 So.3d 629 (Fla. 3 DCA 2009). The petition was disposed of without issuance of a mandate. (See 3DCA Docket, **Case No. 3D09-856**).

The federal limitations period ran anew for over **2 months**, from conclusion of the habeas petition above on **April 24, 2009** until on or about **June 30, 2009,** when the petitioner returned to the trial court, filing a motion for post-conviction relief, pursuant to Fla.R.Cr.P. 3.850.[6] (See Trial Court Docket; see also DE#1:4:¶(b)(3)). On November 21, 2014, the trial court entered an Order denying some of the claims without prejudice to amend, and

_____

[6]The petitioner also filed a petition for writ of mandamus with the appellate court, assigned Case No. 3D12-882, which was dismissed by the appellate court on June 7, 2012. See Real v. State, 91 So.3d 146 (Fla. 3 DCA 2012)(table). The proceeding was disposed of without a mandate. (See 3DCA Docket, **Case No. 3D12-882**. This proceeding has no tolling effect on the above analysis. In any event, it is also well-settled that the petition for mandamus did not toll the limitations period as it did not seek review of the judgment of conviction. In Florida, the scope and purpose of mandamus are consistent with its generally understood use. Under Florida law: "[m]andamus is a narrow, extraordinary writ used to coerce an official to perform a clear legal duty." Sica v. Singletary, 714 So.2d 1111, 1112 (Fla. 2 DCA 1998). Its purpose is to "compel[ ] recalcitrant officials to perform clear legal duties." City of Winter Garden v. Norflor Const. Corp., 396 So.2d 865, 867 (Fla. 5 DCA 1981). Petitioner has not shown that the mandamus petition was challenging the judgment, or seeking relief from the criminal convictions or sentence, instead of merely attempting to compel the trial court to perform its official duty. Under these circumstances, the mandamus application was not a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment," and thus did not toll the federal limitations period. See Moore v. Cain, 298 F.3d 361, 366-68 (5th Cir. 2002) (state prisoner's application to Louisiana Supreme Court for writ of mandamus, which requested that trial court be directed to rule on prisoner's state habeas petition, was not an "application for collateral review" with respect to prisoner's conviction, and therefore, mandamus application did not toll federal habeas statute of limitations); see also Crompton v. Crosby, 2005 WL 3527298, at *9 (N.D. Fla. Dec. 21, 2005); Robinson v. McDonough, 2007 WL 809783 (N.D. Fla. 2007). Even if it were properly filed, it has no effect on the timeliness issue before this court.

granting an evidentiary hearing on two other claims. (See Trial Court Docket; see also 07/31/15 Final Order Denying Rule 3.850 Motion). When petitioner failed to amend the claims, as ordered, a second order was entered denying those claims. (Id.). An evidentiary hearing was held on June 29, 2015 on petitioner's claim that his counsel failed to call and elicit the testimony of Maria Legra at the petitioner's suppression motion and/or at trial. (Id.). It is worth noting that the petitioner was represented by counsel at the hearing. On **July 31, 2015,** the trial court entered a lengthy, detailed order denying the evidentiary hearing claim. (See 07/31/15 Trial Court Order). Because no appeal was timely prosecuted, the proceeding concluded at the latest on or about **August 30, 2015,** when the 30-day appeal period expired.

On or about December 11, 2015, the petitioner filed a petition for belated appeal of the July 2015 Order denying his Rule 3.850 motion, claiming he never received a copy of the Order. (DE#1:9). At the time, it will be recalled that the petitioner was represented by counsel. He does not dispute that counsel would have gotten a copy, nor does he explain what efforts, if any, he made to ascertain whether an appeal had been prosecuted following the denial of the Rule 3.850 motion. In any event, the petition for belated appeal was granted and the appellate court's January 4, 2016 order served as a timely notice of appeal of the denial of his Rule 3.850 motion following an evidentiary hearing. (See 3DCA Docket, **Case No. 3D15-2812**). The petition for belated appeal was disposed of without issuance of a mandate. (Id.).

At this juncture, it is worth mentioning that the Eleventh Circuit has made clear that a petition for belated direct appeal, like the one filed by petitioner above, does not qualify as an "application for State...collateral review" within the meaning of

§2244(d)(2), since under Florida law, it "does not reach the merits of the anticipated appeal or the validity of the order to be appealed." <u>See</u> <u>Danny v. Sec'y, Fla. Dep't of Corr's</u>, 811 F.3d 1301 (11 Cir. 2016) (holding that a petition for a belated direct appeal, under <u>Fla.R.App.P.</u> 9.141(c) does not qualify as an application for state collateral review under §2244(d)(2) and does not toll the limitations period); <u>see also</u> <u>Espinosa v. Sec'y, Dep't of Corr's</u>, 804 F.3d 1137, 1140-41 (11 Cir. 2015) (<u>quoting</u> <u>Jones v. State</u>, 922 So.2d 1088, 1090 (Fla. 4 DCA 2006)). As a result, the time during which the petition for belated direct appeal was pending did not serve to toll the federal limitations period.

Thus, the federal limitations ran unchecked **for over 4 months**, from **August 30, 2015**, when the Rule 3.850 proceedings concluded until **January 4, 2016**, when the appellate court granted petitioner's request for a belated appeal, as previously mentioned above. The denial of the Rule 3.850 motion was subsequently *per curiam* affirmed on appeal in a decision without written opinion. <u>Real v. State</u>, 229 So.3d 1238 (Fla. 3 DCA 2017)(table). The appeal concluded with the issuance of the mandate on **March 17, 2017**. (<u>See</u> 3DCA Docket, **Case No. 3D16-51**).

From the **March 17, 2017** mandate above, the limitations ran again for over **1 month**, until **May 2, 2017**, when the petitioner returned to the trial court, filing yet another Rule 3.850 motion for post-conviction relief. The trial court's order denying relief was subsequently affirmed on direct appeal in a decision without written opinion. <u>Real v. State</u>, 2018 WL 2049332 (Fla. 3 DCA 2018)(unpublished). The appeal concluded with the issuance of the mandate on **June 12, 2018**. (<u>See</u> 3DCA Docket, **Case No. 3D17-1704**).

Before the above mandate issued, the petitioner came to this

court, filing the instant federal habeas petition on **June 6, 2018**, after he signed and handed it to prison officials for mailing, in accordance with the mailbox rule.[7] (DE#1:26). In all over **14 months** of untolled time expired from the time the petitioner's conviction became final and the filing of this federal petition.

### III. <u>Discussion-Timeliness</u>

Since Petitioner filed his federal habeas petition after April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. <u>See</u> <u>Wilcox v. Fla.Dep't of Corr.</u>, 158 F.3d 1209, 1210 (11th Cir. 1998)(*per curiam*). The AEDPA imposed for the first time a one-year statute of limitations on petitions for writ of habeas corpus filed by state prisoners. <u>See</u> 28 U.S.C. §2244(d)(1)("A 1-year period of limitation shall apply to an application for a writ of habeas corpus...."). Specifically, the AEDPA provides that the limitations period shall run from the latest of —

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the

---

[7]The State of Florida and the Eleventh Circuit recognize that "[U]nder the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." <u>Williams v. McNeil</u>, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); <u>Griffin v. Sistuenck</u>, 816 So.2d 600 (Fla. 2002)(date of service in prisoner's certificate of service was used as the filing date); <u>see</u> <u>Fed.R.App.</u> 4(c)(1)("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."). Unless there is evidence to the contrary, like prison logs or other records, a prisoner's motion is deemed delivered to prison authorities on the day he signed it. <u>See</u> <u>Washington v. United States</u>, 243 F.3d 1299, 1301 (11th Cir. 2001); <u>Adams v. United States</u>, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). For purposes of this Report, unless otherwise specified, the date of filing of the petitioner's pleadings is the date file stamped by the prison authorities, and if that is unavailable, then it is the date petitioner signed the pleading. If neither is reflected, then the date of filing is the date represented by petitioner in his federal habeas petition.

time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

See 28 U.S.C. §2244(d)(1).

    The limitations period is tolled, however, for "[t]he time during which a properly filed application for post-conviction or other collateral review with respect to the pertinent judgment or claim is pending...." 28 U.S.C. §2244(d)(2). Consequently, this petition is time-barred, pursuant to 28 U.S.C. §2244(d)(1)(A), unless the appropriate limitations period was extended by properly filed applications for state post-conviction or other collateral review proceedings. See 28 U.S.C. §2244(d)(2); see also, Rich v. Sec'y for Dep't of Corr's, 512 Fed.Appx. 981, 982-83 (11th Cir. 2013).

    An application is properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000)(footnote omitted); see also, Rich, 512 Fed.Appx. at 983. Consequently, if the petitioner sat on

any claim or created any time gaps in the review process, the one-year clock would continue to tick. <u>Kearse v. Sec'y, Fla. Dep't of Corr's</u>, 736 F.3d 1359, 1362 (11th Cir. 2013).

Further, "[a]n application that is untimely under state law is not 'properly filed' for purposes of tolling AEDPAs limitations period." <u>Gorby v. McNeil</u>, 530 F.3d 1363, 1366 (11th Cir. 2008)(citation omitted), <u>cert. den'd</u>, 556 U.S. 1109, 129 S.Ct. 1592, 173 L.Ed.2d 684 (2009). A motion filed past the deadline for filing a federal habeas petition cannot toll the limitations period. <u>See</u> <u>Hutchinson v. Florida</u>, 677 F.3d 1097, 1098 (11th Cir. 2012)("In order for...§2244(d)(2) statutory tolling to apply, the petitioner must file his state collateral petition before the one-year period for filing his federal habeas petition has run."); <u>Webster v. Moore</u>, 199 F.3d 1256, 1259 (11th Cir. 2000).

### A.   <u>Statutory Tolling Under §2244(d)(1)(A)</u>

As noted previously in this Report, there was well over **one year** of untolled time from the time petitioner's conviction became final until he filed this federal petition. While it is true that petitioner's federal limitations period would be tolled during the pendency of properly filed post-conviction proceedings in the state forum, as narrated above, there still remained well in excess of one year during which no state, properly filed collateral proceedings were instituted or otherwise pending which would serve to toll or stop the federal limitations period from expiring. As will be recalled there was over **7** months untolled from the time petitioner's conviction became final and the filing of his first state habeas corpus petition. After that proceeding concluded, the limitations again ran untolled for over **2 months** until he next filed a Rule 3.850 motion that concluded when the time for appeal

expired. The limitations period ran anew for over **4 months** from expiration of the time to appeal until a petition for belated appeal was granted, causing the limitations period to stop until the appeal concluded. Over **1 month** ran untolled from the time the mandate issued following conclusion of the Rule 3.850 appeal until the petitioner filed a second Rule 3.850 motion, which tolled the limitations period. Petitioner then came to this court before the mandate issued on the appeal following the denial of the second Rule 3.850 motion. Given the foregoing procedural history, it is clear this proceeding was not timely filed and the petitioner is not entitled to statutory tolling.

## B. <u>Statutory Tolling Under §2244(d)(1)(D)</u>

The foregoing, however, does not end the inquiry here. Petitioner has not alleged here that he is otherwise entitled to statutory tolling based on newly discovered evidence. To the contrary, the claims raised herein could have been discovered within a year from the time his conviction became final. In fact, petitioner explains that he asked his court appointed Rule 3.850 counsel to raise the issue regarding the trial court's failure to allow petitioner to amend the two claims after the time for doing so had expired. He further faults appellate counsel for failing to pursue this claim on appeal. In his form federal habeas petition, with regard to question no. 18, and the timeliness of this federal proceeding, the petitioner purposefully left it blank.

It is well settled that for statutory tolling purposes, "[T]he time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." <u>Cole v. Warden</u>, 768 F.3d 1150, 1157 (11th Cir. 2014) (internal citations omitted). As applied here, the

petitioner has not alleged, let alone demonstrated that he could
not have been aware of the nature of his claims, much less
discovered its significance before receipt of the record on appeal
following conclusion of the appeal on his first Rule 3.850 motion
in 2016. To the contrary, he certainly could have verified the
issue and sent a letter to the court informing him that his counsel
was refusing to seek leave to amend or otherwise vacate the partial
order on the Rule 3.850, but he did not do so. Certainly, the claim
could have been raised well before the one year limitations period
expired. Petitioner has not demonstrated here entitlement to
statutory tolling of the limitations period.

## C.  **Equitable Tolling**

Next, given the detailed procedural history narrated above,
this federal habeas proceeding is due to be dismissed unless the
petitioner can establish that equitable tolling of the statute of
limitations is warranted. However, as will be demonstrated below,
the petitioner has not demonstrated that he is entitled to
equitable tolling.

Both the United States Supreme Court and Eleventh Circuit
Court of Appeals have held that equitable tolling can be applied to
prevent the application of the AEDPA's statutory deadline when
extraordinary circumstances have worked to prevent an otherwise
diligent petitioner from timely filing his petition. Holland v.
Florida, 560 U.S. 631, 648, 130 S.Ct. 2549, 2562 (2010)("We have
previously made clear that a 'petitioner' is 'entitled to equitable
tolling' only if he shows '(1) that he has been pursuing his rights
diligently, and (2) that some extraordinary circumstance stood in
his way' and prevented timely filing.")(quoting Pace v.

DiGuglielmo, 544 U.S. 408, 418 (2005)); San Martin v. McNeil,[8] 633 F.3d 1257, 1267 (11 Cir. 2011); Chavez v. Secretary, Dept. of Corrections, 2011 WL 2990060, at *7 (11th 2011).

"The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" Holland v. Florida, 560 U.S. at 652, 130 S.Ct. at 2565 (quoting Lonchar v. Thomas, 517 U.S. 314, 326 (1996)). "As for the 'extraordinary circumstances' prong...a defendant [must] show a causal connection between the alleged extraordinary circumstances and the late filing of the petition." San Martin v. McNeil, 633 F.3d at 1267. In Holland, the Supreme Court reiterated that it had previously found that "'a garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." Holland v. Florida, 560 U.S. at 651, 130 S.Ct. at 2564 (citations omitted)(quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). The Holland Court noted that when facts of the case warrant it, equitable tolling can be applied in the "absence of an allegation and proof of bad faith, dishonesty, divided loyalty, [or] mental impairment." Holland, 560 U.S. at 642-43, 130 S.Ct. at 2559-60. The court further explained that "professional conduct that fails to [rise to that level] could nonetheless amount to egregious behavior that warrants equitable tolling." Holland, 560 U.S. at 650-51, 130 S.Ct. at 2563-64.

In setting aside a court's finding that no diligence had been demonstrated, the Supreme Court found that Holland's counsel had

---

[8]In San Martin, petitioner failed to explain how a two-week delay in receiving notice of the Supreme Court's denial of his certiorari petition ultimately caused the late filing of his federal petition, or why he did not have ample time, even after the two-week delay, to have presented a timely federal habeas petition. See San Martin v. McNeil, 633 F.3d 1257, 1261-63 (11th Cir. 2011).

not only failed to file Holland's federal petition on time, but also failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case. Holland v. Florida, 560 U.S. at 651, 130 S.Ct. at 2564. The Supreme Court further found that counsel failed to failed to communicate with his client over a period of years, despite Holland's numerous letters to counsel that repeatedly emphasizing the importance of filing the federal petition on time, identifying the applicable legal rules, pleading for information about the Florida Supreme Court's decision, and pleading with counsel to respond to the letters. Holland v. Florida,[9] 560 U.S. at 651, 130 S.Ct. at 2564.

Something more than attorney negligence may justify equitable tolling in appropriate cases. For example, in Downs v. McNeil, 520 F.3d 1311 (11th Cir. 2009), the Eleventh Circuit drew the distinction between "mere negligence" on the one hand, and "egregious misconduct" on the other. "Egregious misconduct" is conduct in which an attorney makes misrepresentations, gives false assurances, or outright lies about the status of a case to his client. See Downs v. McNeil, 520 F.3d at 1321-22,1323 (giving an example of egregious misconduct as one of "outright willful deceit"); see also, Roper v. Dep't of Corr's, 434 Fed.Appx. 786,

---

[9]In Holland, however, the Supreme Court determined that the facts did not involve a garden variety claim of attorney negligence, but instead far more serious instances of attorney misconduct. Holland v. Florida, 560 U.S. at 651, 130 S.Ct. at 2564. In Holland, the Supreme Court stressed that:

Holland not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have Collins [Holland's attorney]--the central impediment to the pursuit of his legal remedy--removed from his case. And, the very day that Holland discovered that his AEDPA clock had expired due to Collins' failings, Holland prepared his own habeas petition pro se and promptly filed it with the District Court.

Holland v. Florida, 560 U.S. at 652, 130 S.Ct. at 2565.

2011 WL 2693183 (11th Cir. 2011)(holding that "affirmative misrepresentation by counsel" about the status of a motion may constitute "extraordinary circumstances" justifying equitable tolling of the habeas filing deadline).

Further, counsel's mistake "in miscalculating the limitations period does not provide a basis for equitable tolling because such an argument would essentially equitably toll limitations period for every person whose attorney missed a deadline. Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." Lawrence v. Florida, 549 U.S. 327, 336-37 (2007). Likewise, the filing of motions for extensions of time by counsel to file a motion for post conviction relief in state court also does not serve to toll the AEDPA statute of limitations. Chavez v. Fla. Dep't of Corr's, 647 F.3d 1057 (11th Cir. 2011).

The Eleventh Circuit has also cautioned that a petitioner's efforts to learn the disposition of pre-federal habeas steps are crucial to determining whether equitable tolling is appropriate. See Knight v. Schofield, 292 F.3d 709 (11th Cir. 2002)(per curiam); Drew v. Dep't of Corr's, 297 F.3d 1278, 1288 (11th Cir. 2002)("A lengthy delay between the issuance of a necessary order and an inmate's receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas corpus petition." (emphasis supplied)). Where a petitioner alleges to have contacted the court by mail, but provides no copies of the letters and does not make any attempt to otherwise contact the court, such as by calling or seeking help from a person who could go to the court personally, no equitable

tolling is warranted. <u>Drew</u>, 297 F.3d at 1289).

Petitioner has not demonstrated that he was diligent in pursuing post-conviction relief. While the record reveals that the petitioner was a proactive litigant, filing numerous post conviction collateral attacks in the state courts, here he has not established any facts to support a finding that he is "entitled to the rare and extraordinary remedy of equitable tolling." <u>See</u> <u>Drew v. Dep't of Corr's</u>, 297 F.3d 1278, 1289 (11th Cir. 2002). This court is not unmindful that petitioner pursued collateral relief in the state forum. However, it is evident that there was well over **one** year of untolled time during which no properly filed postconviction proceedings were pending which would act to toll the federal limitations period. As a result of petitioner's failure to properly and diligently pursue his rights, he has failed to demonstrate that he qualifies for equitable tolling of the limitations period. <u>See</u> <u>Webster v. Moore</u>, 199 F.3d 1256, 1258-60 (11 Cir.)(holding that even properly filed state court petitions must be pending in order to toll the limitations period), <u>cert. den'd</u>, 531 U.S. 991 (2000).

The time-bar is ultimately the result of the petitioner's failure to timely and expeditiously pursue state post-conviction proceedings and then this federal habeas corpus proceeding. Since this habeas corpus proceeding, instituted in **2018**, is untimely, the petitioner's claims challenging the lawfulness of his judgment, are now time-barred pursuant to 28 U.S.C. §2244(d)(1)-(2) and should not be considered on the merits.

Also, any suggestion in objections or otherwise that he is entitled to equitable tolling, because he is ignorant of the law, has been repeatedly rejected by the Eleventh Circuit and other

courts to have considered the issue. Specifically, the Eleventh Circuit has held that a lack of a legal education and related confusion or ignorance about the law as excuses for a failure to file in a timely fashion does not warrant equitable tolling of the limitations period. See <u>Perez v. Florida</u>, 519 Fed.Appx. 995, 997 (11th Cir. 2013)(<u>quoting</u>, <u>Rivers v. United States</u>, 416 F.3d 1319, 1323 (11th Cir. 2005)(holding that while movant's lack of education may have delayed his efforts to vacate his state conviction, his procedural ignorance is not an excuse for prolonged inattention when promptness is required)); <u>Felder v. Johnson</u>, 204 F.3d 168, 172-73 & n. 10 (5 Cir. 2000)(citing cases), <u>cert. den'd</u>, 531 U.S. 1035 (2000)(holding that ignorance of law and pro se status are insufficient to toll statute of limitations).

As with any litigant, *pro se* litigants "are deemed to know of the one-year statute of limitations." <u>Outler v. United States</u>, 485 F.3d 1273, 1282 n.4 (11th Cir. 2007); <u>see also</u> <u>Raspberry v. Garcia</u>, 448 F.3d 1150, 1154 (9th Cir. 2006)(holding that "a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling"); <u>Shannon v. Newland</u>, 410 F.3d 1083, 1090 (9th Cir. 2005)(observing that, in each of the cases in which equitable tolling has been applied, the requisite "extraordinary circumstances" has been based on "wrongful conduct" that "actually prevented the prisoner from preparing or filing the habeas petition"); <u>United States v. Sosa</u>, 364 F.3d 507, 512 (4th Cir. 2004)(*pro se* status and ignorance of the law does not justify equitable tolling); <u>Marsh v. Soares</u>, 223 F.3d 1217, 1220 (10th Cir. 2000)(holding that *pro se* status and lack of access to an attorney do not warrant equitable tolling); <u>Felder v. Johnson</u>, 204 F.3d 168, 171 (5th Cir. 2000)("proceeding *pro se* is not a 'rare and exceptional' circumstance because it is typical of those bringing a §2254 claim"); <u>United States v. Flores</u>, 981 F .2d 231,

236 (5th Cir. 1993)(*pro se* status, illiteracy, deafness, and lack of legal training are not external factors sufficient to excuse or extend limitations period); <u>Henderson v. Johnson</u>, 1 F.Supp.2d 650, 656 (N.D.Tex. 1998)(claim by prisoner that he was entitled to equitable tolling, because he " 'did not know what to do,' " is "archetypal" for *pro se* prisoners seeking federal habeas relief and "far from the extraordinary circumstances required to toll the statute").

In fact, in <u>Dodd v. United States</u>, 365 F.3d 1273, 1282-83 (11th Cir. 2004), the movant argued for equitable tolling because he was transferred to a different facility and detained there for over ten months without access to his legal papers. The Eleventh Circuit denied equitable tolling, stating that "lockdowns and periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate. <u>Id</u>. at 1283. In <u>Paulcin v. McDonough</u>, 259 Fed.Appx. 211, 213 (11th Cir. 2007), the Eleventh Circuit also determined that the transfer to county jail and denial of access to his legal papers and the law library did not constitute extraordinary circumstances. There, the petitioner Paulcin "failed to allege specifically or present evidence that his detention in county jail, due to pending criminal charges, was extraordinary or anything other than routine. Additionally, in the district court, Paulcin asserted only the conclusory allegation that he was denied access to the library and his records, but failed to allege how his inability to obtain legal materials thwarted his efforts to file a timely federal proceeding." Given all of the foregoing, petitioner here has not alleged, let alone demonstrated, that he is entitled to equitable tolling of the limitations period.

## D. <u>Fundamental Miscarriage of Justice</u>

Further, no fundamental miscarriage of justice will result from time-barring the claim(s) raised in this habeas proceeding. In other words, petitioner has not presented sufficient evidence to undermine the court's confidence in the outcome of his criminal proceedings sufficient to show that a fundamental miscarriage of justice will result if the claim(s) are not addressed on the merits. See Milton v. Sec'y, Dep't of Corr's, 347 Fed.Appx. 528, 531-532 (11th Cir. 2009) (unpublished) (holding that affidavits proffered by *pro se* habeas petitioner were insufficient to establish actual innocence of murder, as would allegedly have created an exception to one-year limitations period, because affidavits were presented more than ten years after murder and eight years after petitioner's trial, the affiants were in most cases aware of the alleged facts to which they attested before petitioner's trial, the affidavits were either not new evidence or were of questionable reliability, and none of the evidence negated petitioner's confession or his taped conversation with the victim's mother wherein he implicated another individual in the murder)(unpublished). Consequently, under the totality of the circumstances present here, this federal petition remains time-barred.

### E. Actual Innocence

If petitioner means to argue here, or in objections, that he is entitled to review on the merits because of "actual innocence," that argument also warrants no relief. It is now well settled that actual innocence may also serve to overcome the procedural bar caused by an untimely filing. The United States Supreme Court has determined that actual innocence, if proved, serves as a gateway

21

through which a petitioner may pass whether the impediment is a procedural bar, as it was in <u>Schlup v. Delo</u>, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and <u>House v. Bell</u>, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006), or expiration of the AEDPA statute of limitations. <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013).[10]

"[T]he <u>Schlup</u> standard is demanding and permits review only in the "'extraordinary' case." <u>House v. Bell</u>, 547 U.S. at 538. "In the usual case the presumed guilt of a prisoner convicted in state [or federal] court counsels against federal review of [untimely] claims." <u>Id</u>. at 537. <u>Schlup</u> observes that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." <u>Schlup</u>, 513 U.S. at 324.

To succeed on a claim of actual innocence, the petitioner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" <u>House</u>, 547 U.S. at 536-37 (<u>quoting</u> <u>Schlup</u>, 513 U.S. at 327, 115 S.Ct. 851). "Actual innocence" requires the petitioner to show "factual innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614,

---

[10]The Eleventh Circuit had before the recent Supreme Court decision already recognized an equitable exception to AEDPA's statute of limitations based on a credible showing of actual innocence. <u>See</u> <u>San Martin v. McNeil</u>, 633 F.3d 1257, 1267-68 (11th Cir.)*, cert. denied sub nom.*, <u>San Martin v. Tucker</u>, _565 U.S. 843, 132 S.Ct. 158, 181 L.Ed.2d 73 (2011).

623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Thus, "[a] court also may consider an untimely petition if, by refusing to consider the petition for untimeliness, the court thereby would endorse a 'fundamental miscarriage of justice' because it would require that an individual who is actually innocent remain imprisoned." San Martin v. McNeil, 633 F.3d 1257, 1267-68 (11th Cir. 2011)(citing Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001)).

Petitioner presents no new evidence whatsoever, let alone any "new reliable evidence" to support a claim of actual innocence. Nor has he suggested that this requisite evidence exists, so as to meet the stringent actual-innocence standard. See House v. Bell, 547 U.S. 518. Rather, Petitioner's claims are purely legal challenges to his conviction and resultant sentence. As set forth above, it is well settled that actual innocence requires the petitioner to show "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623.

There is no federal constitutional violation which would allow this court to ignore the time bar and review the claim raised herein on the merits. See Herrera v. Collins, 506 U.S. 390, 400 (1993)(holding "[c]laims of actual innocence based on newly discovered evidence have never held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); Jordan v. Sec'y, Dep't of Corr's, 485 F.3d 1351, 1356 (11 Cir. 2007). No such showing has been made here.

For all of the foregoing reasons, the petitioner has not demonstrated either statutory tolling, equitable tolling, actual innocence, or that a fundamental miscarriage of justice will result if the court does not review the merits of this federal petition.

This Court is mindful of the Clisby[11] rule that requires district courts to address and resolve all claims raised in habeas proceedings, regardless of whether relief is granted or denied. Clisby, 960 F.2d at 935-36 (involving a 28 U.S.C. §2254 petition filed by a state prisoner); see Rhode v. United States, 583 F.3d 1289, 1291 (11th Cir. 2009) (holding that Clisby applies to §2255 proceedings). However, nothing in Clisby requires, much less suggests, consideration of claims or arguments raised for the first time in objections. Therefore, to the extent the movant attempts to raise arguments or further factual support for tolling the federal limitations period, the court should exercise its discretion and refuse to consider the arguments not raised before the magistrate judge in the first instance.[12]

## IV. **Evidentiary Hearing**

To the extent petitioner requests an evidentiary hearing on this matter, the request must be denied. To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, show both extraordinary circumstances and reasonable diligence entitling a petitioner to enough equitable tolling to prevent his motion to vacate or habeas petition from being time-barred. See generally Chavez v. Sec'y Fla. Dep't of

---

[11]Clisby v. Jones, 960 F.2d 925, 936 (11th Cir.1992).

[12]The petitioner is cautioned that any attempt to raise new facts or arguments, or any effort to provide due diligence in objections to this Report may not be considered in the first instance by the district court. See Williams v. McNeil, 557 F.3d 1287, 1291 (11 Cir. 2009)(finding no abuse of discretion where district court declined to consider petitioner's timeliness argument that was not presented to the magistrate judge); Brown v. United States, 2017 WL 7341401 at *3 (11 Cir. 2017); Starks v. United States, 2010 WL 4192875 at *3 (S.D. Fla. 2010); United States v. Cadieux, 324 F.Supp. 2d 168 (D.Me. 2004). This is so because "[P]arties must take before the magistrate, 'not only their best shot but all of the shots.'" Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987)(quoting Singh v. Superintending Sch. Comm., 593 F.Supp. 1315, 1318 (D.Me. 1984)).

Corr's, 647 F.3d 1057, 1060-61 (11th Cir. 2011)(holding that an evidentiary hearing on the issue of equitable tolling of the limitations period was not warranted in a §2254 proceeding and further finding that none of the allegations in the habeas petition about what postconviction counsel did and failed to do came close to the serious attorney misconduct that was present in Holland, instead, were at most allegations of garden variety negligence or neglect).  If so, the petitioner gets an evidentiary hearing and the chance to prove that those factual allegations are true. Id. As noted by the Eleventh Circuit, "[t]he allegations must be factual and specific, not conclusory. Conclusory allegations are simply not enough to warrant a hearing." Id. at 1061. Based upon the reasons stated above, this is not one of those cases where an evidentiary hearing is warranted on the limitations issue or otherwise.

## V. <u>Certificate of Appealability</u>

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal, but must obtain a certificate of appealability ("COA"). See 28 U.S.C. §2253(c)(1); Harbison v. Bell, 556 U.S. 180, 129 S.Ct. 1481 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." See 28 U.S.C. §2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial

of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court should deny a certificate of appealability. Notwithstanding, if petitioner does not agree, he/she may bring this argument to the attention of the district judge in objections.

## VI. Conclusion

Based upon the foregoing, it is recommended that: (1) this petition for writ of habeas corpus be DISMISSED as time-barred; (2) a final judgment be entered; (3) a certificate of appealability be DENIED; and, (4) the case be CLOSED.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 25th day of June, 2018.


_____
UNITED STATES MAGISTRATE JUDGE


cc: Alberto Real, Pro Se
    DC#M38304
    Okeechobee Correctional Institution
    Inmate Mail/Parcels
    3420 NE 168th Street
    Okeechobee, FL 34972

    Noticing 2254 SAG Miami-Dade/Monroe
    Email: CrimAppMIA@MyFloridaLegal.com